IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

JOHN WILSON                                              PLAINTIFF

v.                              No. 2:22-cv-60-DPM

CLEARWATER PAPER CORPORATION              DEFENDANT

ORDER

1.      Clearwater Paper Corporation fired John Wilson, a black
man, after he refused to take a drug test following an on-the-job
accident.  Wilson sues, alleging that Clearwater disparately enforced its
substance abuse policy among black and white employees.  He presses
claims for a racially hostile work environment, retaliation, and race
discrimination in violation of Title VII, 42 U.S.C. § 1981, and the
Arkansas Civil Rights Act.  Clearwater moves for summary judgment.
Many of the material facts are undisputed.*  Where there is a dispute,
the Court views the record in the light most favorable to Wilson.
*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)
(en banc).

Clearwater manufactures tissue and paperboard products at a
plant in Cypress Bend, Arkansas.  Wilson worked there from February

---

*The Court appreciates Clearwater's consolidated statement, which
accompanied the company's reply.

2020 to September 2021.  He was a member of the United Steel, Paper and Forestry, Rubber Manufacturing, Allied Industrial and Service Workers International Union.  He started as part of the company's service crew but held various jobs until he joined its shipping group. His job duties in the shipping group involved loading railcars and trucks.

Like all Clearwater employees, Wilson signed the company's substance abuse policy.  *Doc. 37 at 2.*  It gives Clearwater the right to request drug tests from "all the employees potentially involved" in a workplace accident or incident.  *Doc. 34-4 at 6.*  It also says that any employee who refuses a request "will be subject to termination and denial of re-employment opportunities."  *Doc. 34-4 at 7.*  Before March 2021, Clearwater only requested post-accident drug tests from employees who were injured.  *Doc. 31-2 at 16.*  Since then, it has requested drug tests from all employees involved, regardless of injury. *Ibid.*

In late September 2021, Wilson and a white co-worker, Zach Martin, were involved in a clamp truck collision inside the shipping warehouse.  Clamp trucks are what the shipping group uses to move Clearwater's finished product—"giant rolls of paper," standing three to four feet tall and weighing approximately four to eight thousand pounds.  *Doc. 31-1 at 8.*  In the months before the incident, Clearwater had gotten out of sync with its orders, which left

–2–

the warehouse full of extra inventory. The extra inventory caused congestion and made it harder for the clamp trucks to move about the warehouse. As Wilson recalled, "it was so stacked up in there the only room was where you exit—through the exit door." *Doc. 31-1 at 12.*

On the day of the incident, Wilson had been using a clamp truck to move paper rolls to the loading bays and onto outgoing trailer trucks. Martin had been using a clamp truck to move rolls to and from the bays. At some point, Wilson started grabbing rolls down the same corridor Martin was exiting. Martin couldn't get by until Wilson moved. Wilson saw Martin, recognized that he needed by, and began maneuvering his clamp truck into the exit spot to allow for more space. Wilson moved deliberately to avoid tearing his roll. Martin grew impatient. Before Wilson had finished maneuvering, Martin started ramming his clamp truck into Wilson's. He kept ramming it until Wilson's clamp truck had been pushed out of the way. Neither was injured.**

---

**Wilson testified on deposition that he wasn't injured. *Doc. 31-1 at 14.* But he denies paragraph ten of Clearwater's statement of undisputed material facts, which says: "Neither Wilson nor Martin were injured in the collision, but Clearwater maintains a system that automatically generates a report . . . any time vehicles come into contact with each other." *Doc. 31 at 2; Doc. 35 at 2.* It's unclear whether Wilson intended to deny all or part of that paragraph. Either way, Wilson offers no proof of injury.

Wilson reported the incident to Clearwater's shipping supervisor, Latauna Perkins, who is also black.   Perkins took the two men's statements and allowed them to speak with their union representatives. Wilson's statement didn't mention any racial animus.  *Doc. 31-1 at 56*. Perkins then asked both men to take a post-accident drug test. Martin agreed.  Wilson refused.

Wilson was concerned he might fail the drug test.  He told Perkins that he "didn't know for sure" whether he had taken his girlfriend's prescription medication. *Doc. 31-1 at 14*; *Doc. 31-6 at 2*.  Perkins advised him that his refusal would result in him losing his job.  His union representatives echoed that warning.  Wilson signed a "Drug Testing Refusal Consent" form anyway. *Doc. 31-1 at 58*.  It reads: "John Wilson refused to consent to take a drug test.  John Wilson understands that this will result in termination of employment."  *Ibid.*

Over the next few days, Clearwater's human resources manager, Rosie Garrido-Calloway, investigated and reviewed the incident with Perkins and the union's president.  As part of their investigation, the three of them called Wilson to get his side of the story.  Wilson didn't mention anything about racial discrimination.  He did, however, tell Garrido-Calloway that:   "I took some medicine that was my girlfriend's medicine, it wasn't prescribed to me." *Doc. 31-2 at 35*. Garrido-Calloway explained to Wilson that the company's substance abuse policy was "very, very clearly written that refusal to take the test

–4–

would mean that he would be terminated."  *Doc. 31-2 at 36-37*. After the call, Garrido-Calloway and Perkins conducted some more review and recommended that Wilson be terminated for refusing to take the drug test.  Wilson was fired shortly thereafter.  Martin received a five-day suspension without pay for his role in the incident.

Three days later, the union filed a third-step grievance asking Clearwater to reconsider Wilson's termination.  A grievance hearing was held in mid-October 2021.  The hearing's focus was on Clearwater's substance abuse policy and Wilson's refusal to take a post-accident drug test.  Neither the union, nor Wilson, raised any race-related concerns at the hearing.  *Doc. 31-7*.  Clearwater upheld Wilson's termination in early November 2021.  *Doc. 31-9*.

In January 2022, Wilson filed a discrimination charge with the Equal Employment Opportunity Commission.  *Doc. 31-3*.  He alleged that he was fired because of his race and in retaliation for his "association with [his] sister who ha[d] complained of race discrimination in violation of Title VII . . .."  *Ibid.*  The EEOC issued Wilson a right-to-sue letter a week later.  *Doc. 2-2*.

**2.    Hostile Work Environment.**  Wilson has abandoned his hostile work environment claims.  Clearwater sought summary judgment on them.  Wilson has not responded to the company's points. That's a waiver.  *Satcher v. University of Arkansas at Pine Bluff Board of Trustees*, 558 F.3d 731, 734-35 (8th Cir. 2009).

3. **Retaliation.** Wilson's retaliation claims under Title VII, § 1981, and the ACRA are analyzed under the same legal framework. *Wright v. St. Vincent Health System*, 730 F.3d 732, 737 (8th Cir. 2013); *Hill v. City of Pine Bluff*, 696 F.3d 709, 716 (8th Cir. 2012). Because Wilson hasn't presented any direct evidence of retaliation, the Court applies the *McDonnell Douglas* burden-shifting framework. *Schottel v. Nebraska State College System*, 42 F.4th 976, 983 (8th Cir. 2022). To make a *prima facie* case of retaliation, Wilson must show three things: protected activity; an adverse employment action; and a causal relationship between the two. *Ibid.*

Clearwater argues, in part, that Wilson hasn't made a *prima facie* case because he didn't engage in protected activity. *Doc. 32 at 10*. The company is correct about Wilson's own actions. On deposition, Wilson testified that he never complained to anyone at Clearwater about race-based discrimination before he was fired. *Doc. 31-1 at 24*. He also acknowledges in his briefing papers that he made his first complaint three months after his termination, when he filed his EEOC charge in January 2022. *Doc. 35 at 4*. To the extent Wilson alleges retaliation for his own activity, he has not exhausted those claims. *Ibid.*

Wilson, however, yokes his retaliation claims to his *sister's* protected activity. He alleges that Clearwater retaliated against him because his sister, who also worked at Clearwater, and twelve other black employees filed a race-related grievance in May 2021, four

–6–

months before he was fired.  *Doc. 2 at 5*.  Wilson's sister and the co-workers alleged that Clearwater was selectively applying its drug-testing policy only to black employees.  *Doc. 34-3*. Clearwater could violate Title VII if it fired Wilson to retaliate against his sister—a close family member—for her protected activity. *Thompson v. North American Stainless, LP*, 562 U.S. 170, 174-75 (2011); *see also Tovar v. Essentia Health*, 857 F.3d 771, 776-77 (8th Cir. 2017). The record, however, undermines that possibility.

Wilson's retaliation claims fail because he hasn't offered sufficient proof that his sister's grievance was the but-for cause of his termination. *Onyiah v. St. Cloud State University*, 5 F.4th 926, 930 (8th Cir. 2021). Wilson points only to the calendar—the four months between his sister's grievance and his termination.  But "without more, an interval of more than two months is too long to support an inference of causation."  *Ibid.* (quotation omitted).  Wilson lost his job because he refused a post-accident drug test.  His supervisor and his union representatives gave him fair warning of the consequences. No reasonable juror could look at these undisputed facts and find that Clearwater had a retaliatory motive.

4.   **Race Discrimination.**  Wilson's race discrimination claims under Title VII, § 1981, and the ACRA are also analyzed under a single framework.  *Lake v. Yellow Transportation, Inc.*, 596 F.3d 871, 873 n.2 (8th Cir. 2010); *Henderson v. Simmons  Foods, Inc.*, 217 F.3d 612, 615 n.3

(8th Cir. 2000). Because Wilson hasn't presented any direct evidence of race discrimination, the Court again applies *McDonnell Douglas*'s framework. *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014). The Court assumes Wilson has made a *prima facie* case. *Lake*, 596 F.3d at 874. Clearwater offers a legitimate, non-discriminatory reason for firing Wilson. *Boston v. TrialCard, Inc.*, 75 F.4th 861, 867 (8th Cir. 2023). The case therefore comes down to pretext. Has Wilson presented sufficient evidence such that a reasonable juror could find that Clearwater's stated reason for firing him—refusing a drug test after an incident when no one was injured—was merely pretext for discrimination? No.

Wilson's race discrimination claims fail for lack of a sufficient comparator. *Boston*, 75 F.4th at 868. The test at the pretext stage is rigorous. Wilson must point to someone who dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *Johnson v. Securitas Security Services USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (en banc). Wilson identifies eight potential comparators: the seven employees mentioned in his EEOC charge, plus Martin. *Doc. 34 at 6*. All are white. But only three—Zach Martin, Cal Phillips, and Johnny Christmas—bear on how Clearwater enforced its substance abuse policy.

Martin had the same job, was subject to the same standards, and was involved in the same incident. But, unlike Wilson, he consented to a post-accident drug test. Phillips injured another employee, was not forced to take a drug test, and was related to the production plant's nurse. *Doc. 35-4*. It's unclear, though, what Phillips's job was, whether he was fired, or whether this incident took place before or after Clearwater began drug testing non-injured employees. *E.g., Doc. 31-2 at 16*. Christmas is perhaps the closest comparator. He suffered an on-the-job injury, was allowed to leave without taking a drug test, and wasn't fired. *Doc. 35-4*. But he worked in maintenance. *Doc. 31-1 at 23*. And, according to Wilson, Christmas was injured and left "to see his own doctor." *Doc. 31-1 at 23*. These circumstances differ from Wilson's. He wasn't injured; he didn't leave the plant to see his doctor; and he told his supervisor and the human resources manager that he might have taken prescription medication that wasn't his.

None of these co-workers are similarly situated enough to be comparators. Wilson has not offered sufficient evidence to create a jury question on whether Clearwater's decision to fire him was a pretext for discrimination. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 854-55 (8th Cir. 2012).

*   *   *

Clearwater Paper Corporation's motion for summary judgment, *Doc. 30*, is granted.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

*26 April 2024*